v. Bell Helicopter Textron Incorporated et al. Thank you, Your Honor. We request leave to reserve two minutes for rebuttal, please. Yes, you may have it. Thank you. May it please the Court, Joan Lukey and with me, Justin Wallace, for the Plaintiff-Appellant, Kurt West. Less than four months after the verdict was returned and the judgment entered in this case, the defendants, Bell Helicopter and Rolls-Royce Corporation, simultaneously issued bulletins, which we have referred to in the brief and will hear as functional recalls, in that the bulletins required every owner and operator of a Bell 407 helicopter, all 1,351 of them, to bring their helicopter to a Bell service center for purposes of a modification within the next five months of that bulletin. The modification went directly to the part and the defect alleged by the plaintiff in his trial a few months earlier. I should note that that trial was the first occasion on which the defendants, when compelled to do so by an order of the court during discovery, revealed the existence of a catastrophic failure mode known as false solenoid activation or FOSA. It's an overspeed protection system fault which, when it is triggered, causes a helicopter's engine to lose power in flight because its fuel is cut virtually off and, therefore, leaves the pilot in a position of needing to attempt an auto rotation. This had never previously been acknowledged publicly before the trial, nor had any of the defendants ever notified operators or owners of the 407 until the bulletin a little less than four months later. The change was to modify the electronic circuitry within the automatic fuel control system, which is known as the FADEC, by causing a change in what circuit, what electric, electricity could flow between one section of the FADEC and another in an attempt, as stated by defendants in the bulletins, to reduce the likelihood of a false overspeed activation. The recall was the same part, as I indicated, that was at issue in the trial. We would like to focus in the brief time today on the trial court's denial of the Rule 60B3 motion. There are other important issues, but by far that is the one of greatest import and that is why we led with it in the brief. A new trial under 60B3 requires the moving party to show clear and convincing evidence of misconduct by the defendants, although that need not be a nefarious type of conduct, and either to show that the misconduct substantially interfered with the plaintiff's ability to fully and fairly prepare and try his case, or that the misconduct itself was knowing and purposeful. And if the misconduct itself was knowing and purposeful, then the burdens shift as to showing the effect on the trial. Correct, and the judge did not engage in the burden shifting analysis. In his denial of the Rule 50, 60B3. Yes, he continued to keep the burden on you. Well, yes. He, actually what he did was in that two-part test, he said, I do not need to and will not decide whether there was misconduct because going to the substantial interference prong, I don't think the plaintiff can prove that. Well, this is one of those instances where the court isn't allowed to move around picking out the factors. He has to decide the first factor first, and he specifically said, I'm not making a decision on whether there was misconduct. He can't do that. That's an error of law with all due respect. You know, we have some questions that don't appear to be evident from this voluminous record. The bulletins that were issued, is the company required by law to issue those bulletins once they have the information? Your Honor, I'm going to have to defer that question to counsel for the manufacturers. All right. Did this bulletin have FAA approval? Yes. It stated on its face that it had FAA approval. I believe it stated on its face there was certainly reference in the briefing and in the, well, in the opposition to the Rule 60B motion, there was a statement and acknowledgment and admission that the process of preparing the bulletins was underway before the trial and apparently during the trial, but that they had not yet submitted for approval to the FAA. From that I infer, and I believe it may be stated on the face of the bulletins, that there had to be and was FAA approval at some point in time. And is there a public record of submission of a request to the FAA for approval of the this, or is there any information about that point in this record? There is nothing in this record on that point. I would note for you that the bulletins themselves, which will indicate whether on its face it notes FAA approval, are in the sealed portion of the appendix. It came in under seal because the defendants had stamped it export controlled, and even though the judge had subsequently ruled that the vast majority of the documents with that stamping were not, in fact, to be sealed, because these weren't addressed, it went into the sealed appendix. Well, I'll have a question for your opponents about whether it is truly necessary to keep those documents sealed. So, Ms. Lukey, did you ask for any discovery? Yes. In the 60B? Yes. I most certainly did, Your Honor. In the 60B3 motion, we said, although we think it's clear on its face at this point, particularly given the admission that this was underway before the trial, that misconduct occurred, if the judge feels that there is simply no more than a rebuttable presumption, we request the opportunity to do limited discovery relating to this process and when, what was known by whom, and that was denied by implication because the court doesn't reference it in the denial of the motion. There's no discussion by the court as to why it felt further discovery would not be helpful in resolving this. He does not discuss it, but I assume it's because he thought it was all right not to reach the issue of misconduct at all, since he was going to find that in his mind there was no substantial interference, a point with which we strongly disagree. He declined to reach the issue of misconduct, and I assume that's why he wouldn't have allowed discovery on misconduct. But as I read his opinion, although he thought the misconduct question was one he did not have to reach, he continued to keep the burden on the plaintiff. He did. He did not assume arguendo that the burden had shifted to the defendant. He did not appear to recognize the burden shifting analysis at all, Your Honor. As far as we could tell, he simply looked at it, decided he said he didn't reach the issue of misconduct, and went to substantial interference, where he made another error of law because his reason for saying, I believe there's no substantial interference, is that he took a footnote in which plaintiff Yes, what does that footnote mean? The footnote meant that in the, well, let me be very clear about this. The fix that we believe is ultimately necessary to correct this problem. It's a step in the direction because it finally recognizes that this particular catastrophic failure mode is not simply a product of failing capacitors. It's an electronic circuitry and software problem. But because that fix refers to the fact that software modifications will be coming later but doesn't include them or tell us what they are, we were very clear that for purposes of this motion, where there is no reason for a plaintiff to admit to underlying causation or not on the basis of a bulletin, we are not taking a position that this would have prevented the accident. In honesty, we think this is a halfway step. We don't think it gets them all the way there. And based on our engineer's testimony at trial, software changes are going to be needed before they can actually eliminate this newly revealed catastrophic failure mode. That's what it meant. Could I ask you about the judge's opening statements in his order which have to do with the relatively small amount of damages versus the amount of money put into this litigation? If that's true, it's a bit of a quandary as to why there is an appeal. Would you care to respond? I would, Your Honor. The uncontroverted evidence in this case is that Mr. West, who is sitting in this courtroom today, suffers from moderate to severe persistent and treatment-resistant post-traumatic stress disorder. I found the court's post-trial order to be disrespectful to Mr. West and to the severity of that particular psychiatric condition. I found it particularly appalling because the judge knows, and it is in the record, that Mr. West's medical certificate was pulled by the FAA at the beginning of this trial and that he was no longer able to fly. That was not permitted to go before the jury, and I understand the judge's concern because it happened literally as the trial was ongoing. Nonetheless, the manner in which he disdained the severity of that issue was very troubling to me, and I felt very disrespectful to Mr. West, whose career has been interrupted by this, and I think it was inappropriate to suggest that post-traumatic stress disorder, which doesn't show physical manifestations, is nonetheless a serious disorder. Okay. Thank you for providing us with that information. I'm sorry to have interrupted your argument. Thank you very much, that's all right. Moving on, we believe that the evidence of this misconduct here was extremely clear. There were both document requests and interrogatories going to the heart of this issue. Once the existence of FOSA was revealed, we made every effort to find out about what had been a hidden defect. This was not disclosed to anyone outside of the defendants. Are you asking us to make the decision as to whether there was misconduct, or are you saying it needs to be remanded so the district judge makes that decision? We feel the misconduct is frankly clear enough on the face of the record that you could do it, and I have to tell you there's a level of discomfort, given the tenor of the court's post-trial order, about going back to the court on any issue. However, if that is to be what happens, we will certainly do so. Are you asking for a new judge? We did in the conclusion of the brief, Your Honor. We did. Because of the tenor of the order, the post-trial order. But in any event, there was both discovery and misconduct in that they admitted that they knew about this before trial, and yet they never supplemented the requests, which are set forth in the record at pages 1082 and 83. And at the trial, and perhaps this is the easier issue for this court, at the trial I posed a question directly to the chief technical expert for GPAC, Bruce Millar, as to his interactions with Bell and Rolls-Royce on these issues. He did not disclose that there were actually ongoing meetings at that time in which they were trying to come up with a fix, which would go into the bulletin, which apparently nobody was too worried about getting out in time for us to be aware of it in this litigation. We therefore say that the misconduct is both in the form of discovery and clear on its face in the form of the trial misconduct, and therefore that the substantial interference issue basically has a proxy in the form of that misconduct, and a new trial should have been issued. There was a second error of law here, which was that the judge said that as to both subsections He may finish. Thank you. That the evidence had to be of a nature that would probably change the result. While we believe this would have changed the result, the jury took two days to decide the issue of, was it ice, snow ingestion, or was it FOSSA, we don't, that's not what the standard is under 3, under subsection 3, and therefore we believe that was a second error of law that was applied by the court in this instance. I thank you. Thank you. Good morning. Good morning, Mr. Reid. May it please the court. My name is Jim Reid. I represent GPEX, and we briefed the issue of the plaintiff's contention that Rule 60B entitles the plaintiff to a new trial for the failure to produce evidence of the bulletins or the alerts. Are you telling us you're not going to argue that because you've briefed it? No, Your Honor, I just wanted to clarify that we sort of divided the responsibility here, and our issue was essentially the issue that Attorney Lukey has spoken about this morning. To answer your question with respect to the FAA issue, it is required by law that any modification be submitted to the FAA for approval before it can be implemented. The jury decided... Why didn't you disclose it? Disclose the evidence of the bulletins, Your Honor? Well, I know the bulletins themselves didn't go out for four months, but certainly there was a lot of activity leading up to the production of the bulletin. Why wasn't that disclosed to the plaintiff? We did not feel that we had any obligation to make disclosure either before or at the time of trial because the development of the modification set forth in the bulletins was in a very preliminary stage. In other words, it was being evaluated, initially tested, and there wasn't anything at that point in time to be produced. It was... Oh, please. That defies credibility. There was nothing about a potential filing to the FAA until the FAA gives its approval? They were working on developing the modification that was subsequently submitted to the FAA. And there are memos about that, aren't there? Or was this all done orally to avoid there being a paper record? I don't know if there were memos, but there were conversations, certainly, between JPECS and Rolls-Royce with respect to the development of the issue. But the plaintiff is essentially contending that she has a right, that he has a right to be in the engineering lab of the defendants while they're attempting to work a modification to a product. It wasn't at a stage where I felt as trial counsel that there was anything to disclose because they were simply evaluating, testing, and developing this modification. Was this proposal submitted to the FAA, as Ms. Lukey said, during the trial or before the trial? No. When was it submitted to the FAA? I can't tell you specifically when prior to its release in January, but I can tell you it was after the trial. Well after the trial. Why did you oppose discovery on this issue? There's three reasons to oppose discovery. One, Your Honor, the principal reason is that it wasn't required by the so-called second set of interrogatories because plaintiffs in filing those interrogatories and requests for production specifically agreed that they would be time limited and the time for supplementing the second set of interrogatories or requests for production had expired well before trial. And it was specifically the second set that was propounded following a conference with the court in April 2012 when the court agreed that a second set should be propounded to deal specifically with the FOSTA issue. So the time for responding to the second set of requests for productions had expired well before trial. Well, counsel, there's a time to respond, but are you saying that if there is additional relevant information that comes up subsequent to the response that you don't have an obligation to supplement it? Yes, Your Honor, because the parties reached an agreement that the time to respond to the second request for production would be time limited. There was a specific agreement, and plaintiff doesn't dispute that, by the way. It isn't plaintiff's contention. I don't read plaintiff's brief to agree with that, by the way. Well, it is not plaintiff's contention that we had an obligation to respond by supplementing the second request for production. That's clear from the briefs. She's relying upon the first request for production, which in our judgment was waived as a result of the April 2012 hearing before Judge LaPlante, at which he said to her, we had objected to any further production with respect to the first set of requests for production. That was the whole purpose of the hearing that day. Judge LaPlante said, look, you've got plenty of time to complete discovery, Ms. Lucchi. Why don't you file a second request for production directed specifically to the issue of the FOSA offense? The defendants are claiming that the FOSA offense are not responsive to the first set. Why don't you just file a second? She said, okay, if we submitted a transcript that in our judgment verifies our position with respect to that issue as a supplemental transcript to our brief. Are you saying that this disclosure that's now being requested would not have been required under the first set of interrogatories? Yes. What if you're wrong about that? Well, if I'm wrong about that, I still say we didn't have an obligation to supplement, Your Honor, at the time for the reason that it wasn't necessary to correct any response that we had previously made, number one. And number two... No, wait, why not? I don't understand why you're saying that. Well, the first set of interrogatories, the only claim is that seven or eight should have been Seven doesn't even apply because it involves specifically the question of whether there was an accident. So is that a question on which we can pass judgment? Probably not. I'm not sure what you said. Probably not. Not. And what about the next one, question eight? We had objected to producing any FOSA-related materials with respect to request for production number eight on the basis of a response that wasn't responsive. So that's why the court entered into this discussion about having a second set request for production be propounded to deal specifically with the FOSA issues. And is your position that that particular second request didn't require supplementation? It clearly did. But she wasn't relying upon the second request for the reason that it was limited in time. She specifically does not rely on the second request for production in her brief as a basis for supplementation. And from that you derive she's waived that issue? She waived the issue well before briefing the issue. She waived it in connection with the propounding of the second request. It was limited in time by agreement. Okay. And we have that transcript of that hearing in the record? You do. Okay. You do. All right. Thank you, counsel. Good morning. Good morning. May it please the court, my name is Martha Gaithway and I represent Rolls-Royce. I had intended to just discuss the issues that we had submitted in our brief, but since the court has asked questions about the Rule 60 motion, I'll start with that even though I had not intended to. It's a wise choice. Your Honor, in terms of putting the discovery dispute in context, I'd refer the court to joint appendix page 1117, which is a joint agreement of the parties with respect to discovery. There had been a series of discovery motions, motions to compel motions for protective order, and in the early stages of discovery, the defendants had spent over $800,000 trying to retrieve documents and information responsive to the plaintiff's discovery requests. The parties ultimately reached an agreement, which is memorialized at page 1117, where the plaintiffs agreed to withdraw their motions to compel, the defendants agreed to withdraw their motions for protective order, and the parties agreed that to avoid additional hundreds of thousands of dollars worth of discovery, that the documents that had already been collected by the records custodians that were bid through June of 2011, was the universe of information that would be searched in order to provide the plaintiff with the discovery that they had requested. And so that is the context of our discovery obligations. It was part of a strategic decision that the plaintiffs and the defendants made and reached an agreement, and I have a very clear conscience, Your Honors, that we fulfilled our obligations under that agreement. In addition, Your Honors, there was evidence that had been produced about changes to the capacitors in helicopters that existed after Mr., or were put into effect after Mr. West's accident. The court in that situation ruled that that information would not be allowed to be heard by the jury because it was a subsequent remedial repair. With respect to the information about the bulletins, as Attorney Wheat has noted, the bulletins themselves were not released until January of 2014, but the information contained in the bulletins would not have been admissible in court because it would have constituted a subsequent remedial repair. With respect to... Well, there's a difference between admissibility and discoverability, isn't there? Yes, Your Honor, there is, but I think in terms of the context of whether a new trial would be required in this case, whether it would have made any difference, I'm concerned that the argument has been made that somehow the defendants were hiding something, that we did not disclose, that there had been a problem with FOSSs in these types of helicopters. And, in fact, my client's engineering expert, a man named Mal Atherton, testified at length, and I would refer the court to Joint Appendix 2673, where Mr. Atherton was asked by Mr. West's counsel, didn't you know about this known risk of FOSSs? Yes, we did. And that's not something that's intended? No, it's not. And it is a risk in these types of engines. So all the FADEC engines, including Mr. West. He agreed that that was the case. So that information was heard by the jury. And he did not say, in fact, we're working on a submission to the FAA about a particular aspect of the FOSS type problem? That specific question was not raised, Your Honor, but the context of the whole case... Well, how could it be raised? But, Your Honor, Mr. West and his experts took the position throughout the trial that my client and the other defendants had not properly addressed the FOSS issue. They were saying that we had made a mistake by not looking at the root cause of the FOSS problem. That would seem to make the information about the FAA more relevant, not less. Well, Your Honor, with all due respect, I think that in terms of what the jury heard and understood what the case was about, the fact that they claimed we weren't doing anything to address the problem actually was a better argument for them than that we were trying to figure out whether there was some sort of a fix that we could implement. Again, Your Honor, this would be classic Rule 407 information. Yeah, finish your thoughts. Go ahead. In the context of this trial, I firmly believe that we complied with our discovery obligations and that Mr. West received a fair trial. Thank you. Thank you. May it please the Court. Brian Quirk on behalf of Bell Helicopter Textron. I was also going to address some of the issues I raised in my brief, namely the NTSB report and failure to warn, and I'm happy to answer any of the Court's questions in that regard, but I'd like to also focus my comments on the 60B issue. Thank you. With respect to Judge Thompson's recognition that there is a difference between admissibility and discoverability, these materials, based upon the prior rulings by this Court in this case, would have been inadmissible as subsequent remedial measures under Rule 407. The trial court previously held that evidence related to capacitor upgrades was excluded under that same rule. It seems to stand that these materials would likewise have been excluded from trial, but your point's a good one. They still would have been discoverable, arguably. If they were discoverable, they would have been merely cumulative information. I say that because appellant's expert, Bloomfield, testified at trial that the defendant's fixes for FOSA, the previous fixes, didn't fix anything. And that's at the joint appendix 13-12-13. And that point is important, Your Honor, because... Excuse me. Cumulative is a concept that also goes to admissibility. That's true. I'm just saying cumulative in the general sense of discovery. They had information of prior attempts to remedy this situation post-accident. You have to remember that this information is five years post-accident. The conversations and the bulletins that we're speaking about, five years post-accident, it would have been a subsequent remedial measure. In addition, they had information post-accident about other fixes. Appellant's counsel said today that she did not believe that this resolved the problem. Well, that's the same testimony that her expert testified to at trial, the same precise testimony. With respect to the court's ruling as to the information at issue, because of the appellant's recognition that he was not relying upon this information and that it would not have prevented the accident, the court properly found that this information was irrelevant. As I understood Ms. Lukey's point, they do not say this was a fix for the precise FOSA problem that they allege. But it's only a first step. And that the bulletins say that there would be further software developments and that she is not conceding at this point that the further software developments would have been irrelevant to the problem on which they sued. We'll defer to the language of the bulletins itself, Your Honor, but we're not sure it gets into that detail with the software. Does it say anything about further software development? It mentions software in some regard. I'd have to go back and look specifically as to the context. And where on the record precisely are these? Is it one bulletin or two? There's two bulletins, Your Honor, one from Rolls and one from Bell, and I believe they're in the sealed appendix. I know they're in the joint appendix. I believe it's in the sealed appendix. Why did they have to be sealed? That was a decision made by counsel at the trial court level, Your Honor. I'm not sure if I can describe it in full detail. You have one week to get back to the court and both parties on whether it's necessary to continue to seal the bulletins themselves. Yes. And the other material. I don't know what it is that's in the sealed document. We will. In this court, we don't like sealing. We're open to the public, all right? Understood. Thank you, Your Honor. We will do that. I don't even understand how a public document can be sealed. I don't understand how that can even be a trial strategy. The public document of the bulletins, Your Honor? Yes. Are the bulletins a public document? I believe they are, yes. So we will address that in a week, Your Honor. I'd be happy to. With respect to what I was saying about the judge's ruling that the evidence was immaterial, based upon his knowledge of the case for three years prior to trial and three weeks during trial, that's an important finding because this court, based upon the record, can make a finding based upon the court's finding that even if the burden shifted to the appellees, that we would satisfy that burden by clearing convincing evidence that the material at issue is inconsequential. And that's the issue. Do you have enough before you to make that ruling? With the court's finding, we believe you do. Okay. Thank you. We ask that the trial court's decision be affirmed and the jury's verdict be upheld. Thank you. Very quickly, the reference to the software is at page one of the sealed appendix, and it indicates it will be forthcoming. We don't have that. We don't know what it says. I'm sorry. We don't have the software. Okay. We don't know what change they made, Your Honor. We have seen something that suggests that it may have related to this, but it's not in the record. The defect here was known to these defendants since 1998. They did everything in their power to hide it. There was never an agreement that they did not have to supplement their discovery responses to request number one. It was an agreement not to file a motion to compel on the issue of an additional custodian and additional search terms. That's all it was. We're happy to rely on the sealed appendix transcript. Sorry, that's not sealed. It's a supplemental appendix transcript. I would point out to the court that nothing has been said about the interrogatories, which were also mentioned. Interrogatory number 13 to Rolls-Royce required them to identify all meetings between Rolls-Royce and GPACS in which FADEC quality issues or performance problems were discussed regarding this FADEC. It's quoted at JA-1083. There is nothing in the sealed appendix that allowed them to walk away from that, even if they were intentionally not making documents of the meetings that were going on. The meetings were happening and the language matches. The interrogatory asked for meetings. The admission in the opposition to the Rule 60 motion was about meetings. They chose not to disclose it, and Bruce Millar sat on that stand and in answering my questions said nothing about ongoing meetings. That is misconduct on its face, which this court can address. And I will stop at that. Thank you. Unless there are questions. I suspect the answer here is self-evident, but have you been through the TAMP program? In this case, we – I can't answer a yes or no. It started and the defendant said it would be futile and it was taken off. Okay. Thank you. Thank you. Counsel. I had a conversation with Attorney Lukey and she thought it was futile as well. Well, after you told me to – Enough, counsel. Enough. Thank you, Ms. Lukey. It was taken off by – Do you – does each side still think it would be futile? It may depend on what we do. It may. I have been given no indication there will be anything forthcoming. Okay.